is any established custom requiring the seamen to do so, and ten days having elapsed from the ending of the voyage before the issuing of process, this exception is not well taken and must be disallowed.

The third exception alleges that the facts stated in the libel are insufficient in this, "that the libellants abandoned the said vessel before her cargo was fully discharged."

The ruling upon the second exception disposes of this one. If the voyage ended with the mooring of the ship at Kalama, the libellants were then entitled to their wages and discharge, whether the cargo was unladen or not.

Besides, this exception is not well pleaded, because, while taken to the sufficiency of the libel, it also sets up a new fact, to wit: that the libellants unlawfully abandoned the ship, and relies upon that rather than the insufficiency of the libel, as a defense to the suit.

## Case No. 424.

### The ANNIE SOPHIA.

[Blatchf. Prize Cas. 219.][1]

District Court, S. D. New York. Sept. 1862.

PRIZE—ATTEMPT TO VIOLATE BLOCKADE.

Vessel and cargo condemned for an attempt to violate the blockade.

In admiralty.

BETTS, District Judge. This vessel, laden with a cargo of salt, soap, &c., was captured on the 20th of August, 1862, at sea, off Florida or South Carolina, by the United States steamer R. R. Cuyler, and was sent into this port for adjudication. She was libelled for condemnation as prize, September 5, 1862, and, on the return of the monition against the vessel and cargo, September, 23, in open court, the defaults of both were duly taken, no one appearing or intervening for them and a formal decree of default was rendered by the court against them. The ship's papers and the proofs in preparatorio in the cause were submitted to the court, and the district attorney thereupon moved for judgment of condemnation and forfeiture in favor of the libellants against the vessel and cargo.

The vessel had on board, when arrested, a British certificate of ownership, dated December 2, 1858, certifying that she was British-built, and that her owner, Saunders, was a resident of Nassau, N. P.; shipping articles for a voyage from Nassau to Baltimore and back to Nassau, signed by the crew August 10, 1862; a clearance from that port

[1][Reported by Samuel Blatchford, Esq.]

for Baltimore, dated September 16, 1862; and a letter of consignment dated Nassau, August 14, from the owners to Montell & Co., designating the cargo consigned, and the articles to be returned therefor from Baltimore to Nassau. No manifest or bill of lading accompanied the shipment. The preparatory proofs show that the representation of the destination of the vessel and of the object of the voyage was simulated and false, and that the voyage was made up and despatched for any port of the Confederate States into which the vessel could be run. The master was a native of North Carolina, as were also some of his crew. He had a few weeks previously, in violation of the blockade, run a vessel out of Wilmington, North Carolina, to Nassau. He and the owners of this vessel knew all about the war and the blockaded ports. The vessel was not intended to go to Baltimore, and did not steer for that place, but for the blockaded coast, until the capturing ship was observed, and then the schooner shaped her course towards Baltimore. When the master discovered that he was chased, he threw some papers overboard, for fear they might be of injury to the vessel; and the steward testifies that the master, besides the papers, threw overboard a Confederate flag which the schooner had with her. That was done after the schooner was brought to by the steamer, and before the small boat boarded the prize. The two mates assert that they thought the schooner was going to Baltimore, and deny all knowledge that she was to run the blockade. The captain testifies that she was to break the blockade, and the steward says that the captain told the men so after the schooner left Nassau, and before the Cuyler came in sight.

The proof is very clear and satisfactory that the voyage was set on foot and prosecuted with the purpose to run into a blockade port, and the vessel and cargo are, consequently, lawful prize.

## Case No. 425.

### The ANNIE TEAS.

[Sometimes cited for The Annie Deas. Case No. 419.]

## Case No. 426.

### The ANNIE W. GREEN.

[Sometimes cited for The Ann Green, Case No. 414.]

ANN, The JULIA.

[See The Julia Ann, Case No. 7,577.]